IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| HUNTON & WILLIAMS, LLP, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action Number 3:06CV477 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on cross Motions for Summary Judgment filed by Plaintiff Hunton & Williams, LLP ("Hunton & Williams") and Defendant United States Department of Justice ("DOJ"). For the reasons stated below, the Court shall GRANT in part and DENY in part both Motions.

**I. BACKGROUND**

On May 26, 2006, Hunton & Williams submitted a request to the DOJ via hand delivery under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The request sought DOJ documents related to (1) Research in Motion, Ltd. ("RIM"); (2) NTP, Inc. ("NTP"); (3) eight patents ("the Campana Patents"); (4) the reexamination of the Campana Patents by the U.S. Patent and Trademark Office ("PTO"); and (5) the infringement action concerning the Campana Patents styled *NTP, Inc. v. Research in Motion, Ltd.*, Civil Action Number 3:01-CV-767-JRS (E.D. Va.) ("the BlackBerry Litigation").

Although the request was initially received by the Criminal Division of the DOJ's FOIA Unit, the request eventually reached the Civil Division. The Civil Division sent the request to John

Fargo, who is the Director and former Assistant Director of the Intellectual Property Staff, Commercial Litigation Branch, Civil Division. The request was sent to Fargo because he was the primary point of contact for communications between the Civil Division and RIM and, therefore, the person most informed and best equipped to facilitate the DOJ's response to the request.

Upon receipt of the request, Mr. Fargo conducted a manual and electronic search of the DOJ's files. Mr. Fargo also sent requests to the appellate section of the Civil Division, the Criminal Division, and the Executive Office of the United States Attorneys ("EOUSA") so that their files could be searched for responsive documents as well. This action centers on 311 documents which were withheld in full or in part by the Civil Division.

The DOJ asserts that the documents at issue were withheld pursuant to FOIA Exemptions 5 U.S.C. §§ 552(b)(4),(b)(5), and (b)(6) ("Exemption 4," "Exemption 5," and "Exemption 6" respectively), which exempt government documents from disclosure on the grounds of deliberative process privilege, attorney work product, attorney-client privilege, confidential personal information exemption, and proprietary information exemption. Specifically, pursuant to Exemption 4,[1] the DOJ withheld the technical information RIM provided to the DOJ relating to RIM's databases and practices. The DOJ claims that the withheld information is proprietary in nature and exempt under Exemption 4 because it is confidential commercial information and would be competitively harmful to RIM. The social security number and the date of birth of Mr. Fargo was withheld pursuant to Exemption 6,[2] which protects the confidential personal information of government personnel.

---

[1] 5 U.S.C. § 552(b)(4) exempts from disclosure records which contain "trade secrets and commercial or financial information obtained from a person and privileged or confidential."

[2] 5 U.S.C. § 552(b)(6) exempts records which contain "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."

The bulk of the documents, and thus the primary issue of contention in this dispute, were withheld pursuant to Exemption 5. The DOJ withheld email communications and documents transmitted by those communications pertaining to the BlackBerry Litigation, a telephone log, and calendar. The documents pertaining to the BlackBerry Litigation were exchanged among counsel for the DOJ, RIM, PTO, the Department of Commerce ("DOC"), Office of Science and Technology Policy of the Executive Office of the President ("OSTP"), and the Department of Homeland Security ("DHS"). The documents discussed views concerning the effect of any injunction on governmental use of Blackberry devices, the issue of how exceptions for government use could be implemented, and whether any injunctive relief would be contrary to the public interest. Additionally, withheld communications also included drafts of potential declarations and pleadings.

The DOJ claims that the DOJ, DOC, PTO, OSTP, and DHS are government agencies as defined by FOIA and, therefore, meet the inter-agency withholding requirement under Exemption 5. Although RIM is not a government agency, DOJ contends that RIM and the DOJ entered into a Common Interest Agreement ("Agreement") for the limited purpose of addressing their shared common interests in the BlackBerry Litigation. The DOJ maintains that RIM and the DOJ were essentially co-counsel. Thus, the communications between RIM and the government also may be withheld under Exemption 5 as inter-agency communications.

Hunton & Williams does not contest the withholdings under Exemption 4 and 6. But, it disputes the withholdings pursuant to Exemption 5, particularly the communications between the DOJ and RIM and the DOJ and the PTO. Hunton & Williams argues that pursuant to the Supreme Court's holding in *Department of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S.

1 (2001), the documents exchanged between the government and RIM do not fall under the protection of Exemption 5 because RIM was acting in its own interest and, therefore, the withheld documents do not qualify as inter-agency or intra-agency material. In the alternative, should the Court find that the Agreement between the DOJ and RIM is valid and qualifies the withheld documents as inter-agency communications, then the government should release the documents which (1) precede the written Common Interest Agreement and (2) do not relate to the common interests of RIM and the government. Hunton & Williams also contends that a number of the documents on the DOJ's Vaughn Index do not meet the underlying legal privilege asserted.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted only where "there is no genuine issue as to any material fact" and where "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Court must view the facts and the inferences drawn therefrom in the light most favorable to the non-moving party. *Ballinger v. North Carolina Agric. Extension Serv.*, 815 F.2d 1001, 1004 (4th Cir. 1987). While viewing the facts in such a manner, courts look to the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits or other specific facts to determine whether a triable issue exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex*, 477 U.S. at 327. "Where no genuine issue of material fact exists," it is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (internal quotation marks omitted).

Since FOIA cases generally involve a legal dispute over how the law is to be applied to the documents withheld, "FOIA cases are generally resolved on summary judgment once the documents at issue have been properly identified." *Wickwire Gavin, P.C. v. USPS*, 356 F.3d 588, 591 (4th Cir. 2004). A government agency is entitled to summary judgment if there are no material facts in dispute and it can demonstrate that (1) it made a good faith effort to conduct a reasonable search using methods that can be reasonably expected to produce the information requested and (2) each withheld document falls under one of FOIA's nine enumerated exemptions. *See City of Virginia Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1252 (4th Cir.1993); *Oglesby v. United States Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir.1990); *Wickwire Gavin, P.C. v. Defense Intelligence Agency*, 330 F. Supp. 2d 592, 596-97 (E.D. Va. 2004). The government may demonstrate the adequacy of its search through reasonably detailed affidavits of responsible agency officials, "setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched so as to give the requesting party an opportunity to challenge the adequacy of the search." *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1247 (4th Cir. 1994) (internal quotation marks omitted); *accord Miller v. United States Dept. of State*, 779 F.2d 1378, 1383 (8th Cir.1985).

Because the DOJ searched the paper and electronic files of its criminal, civil, and appellate divisions and requested several other government agencies to do the same, and Hunton & Williams does not contest the adequacy of the DOJ's search, the Court finds that the DOJ's search was reasonably adequate. Thus, the Court only needs to determine whether the withheld documents are exempt under FOIA.

### III. DISCUSSION

FOIA mandates disclosure of records held by a federal agency when requested, unless the documents are subject to one of the nine enumerated exemptions. 5 U.S.C. § 552; *Klamath*, 532 U.S. at 7. "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *Hanson v. U.S. Agency for International Development*, 372 F.3d 286, 290 (4th Cir. 2004) (*quoting N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). As such, the nine exemptions are narrowly construed so as not to frustrate FOIA's underlying policy of disclosure and non-secrecy. *Klamath*, 532 U.S. at 8.

Exemption 5 prevents the disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *see N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148-49 (1975) (noting that "Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency," and therefore, "it is reasonable to construe Exemption 5 to exempt those documents . . . normally privileged in the civil discovery context"). A document qualifies under Exemption 5 if (1) its source is a government agency, meaning the communication must be "inter-agency or intra-agency" and (2) the document "fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 9.

Thus, this case presents two primary issues for the Court to decide: (1) whether the Common Interest Agreement qualifies the documents exchanged between the DOJ and RIM as intra-agency or inter-agency records under Exemption 5 and, if so, (2) whether the withheld material is subject to the deliberative process privilege, the attorney-client privilege, and/or the attorney work-product

doctrine.[3]

## A.

Relying on the Fourth Circuit's decision in *Hanson*, the DOJ argues that because RIM and the DOJ shared common interests in the BlackBerry Litigation and subsequently entered into a verbal and written agreement to reflect those shared interests, the documents exchanged between them qualify as inter-agency material, thereby meeting the first threshold requirement of Exemption 5. Based on the Supreme Court's holding in *Klamath*, Hunton & Williams counters that the documents generated by a third party outside of the government agency (i.e., RIM) do not qualify for protection under Exemption 5 if the third parties communicated with the government in their own interest and "acted as self-advocates at the expense of others seeking benefits inadequate to satisfy everyone."[4] *Klamath*, 532 U.S. at 12. The Court finds the DOJ's argument persuasive.

A close reading of *Klamath* shows that the facts of the instant case are readily distinguishable from those of *Klamath* and more analogous to those of *Hanson*. In *Klamath*, the Supreme Court acknowledged that lower courts have held that outside parties who have been retained by a government agency as a consultant may satisfy the "inter-agency" or "intra-agency" requirement under Exemption 5 because "the records submitted by the outside consultants played essentially the same part in an agency's process of deliberation as documents prepared by agency personnel might

---

[3]The documents withheld pursuant to Exemptions 4 and 6 are uncontested issues that the Court need not address.

[4]The Court notes that while Hunton & Williams argues that RIM does not qualify as an inter-agency or intra-agency under Exemption 5, it does not contend that the PTO, DOC, OSTP, and DHS fail to meet the inter-agency or intra-agency requirement under Exemption 5. Thus, the Court need not address this issue, although it would invariably find that those agencies satisfy the requirement.

have done." *Id.* at 10. The Court noted that in those cases the consultant "does not represent an interest of its own, or in the interest of any other client, when it advises the agency that hires it. Its only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do." *Id.* at 11. Thus, the Court concluded that the Indian Tribes, who were communicating with the government as "self-advocates" for water rights at the expense of other applicants who were seeking those same benefits, failed to qualify as government consultants and, therefore, failed to satisfy Exemption 5's "intra-agency" or "inter-agency" requirement. *Id.* at 12.

The first glaring distinction between this case and *Klamath* is that the parties in *Klamath* did not enter into a common interest agreement. Instead, the government unsuccessfully argued that the Indian Tribes were serving as consultants to the government agency. *Id*. at 12 n. 4. Here, relying on the common interest doctrine, the DOJ entered into a common interest agreement with RIM, creating a symbiotic relationship between RIM and the government analogous to that of co-counsel. Another key distinguishing factor between the case at bar and that of *Klamath* is that the Indian Tribes sent material to the government agency in an effort to obtain a government benefit, i.e., water resources, to the detriment of other parties who were also petitioning the government for the same benefit. *Id.* at 13. Here, the DOJ was not distributing government benefits between adverse parties. Instead, the DOJ partnered with RIM in a joint effort to ensure that an injunction would not prevent the government or its private contractors from using the BlackBerry systems.

Conversely, the Fourth Circuit in *Hanson* found that a government agency and an outside engineering firm retained by the agency to design and manage the construction of water and sewage treatment facilities in Egypt shared a common interest in resolving on favorable terms a construction

dispute that arose during the course of the project. 372 F.3d at 292. In *Hanson*, the attorney of one of the sub-contractors involved in the dispute filed a FOIA request with the government agency seeking the disclosure of a number of documents, including the report of a third party neutral who was hired by the engineering firm to evaluate the negotiation process, the parties' positions, and the impediments to settlement. At the time of the request, the construction dispute was still ongoing and the subcontractors had threatened to sue the government agency and the engineering firm. *Id.* at 289-90.

> The Fourth Circuit first explained that
>
> the common interest doctrine applies when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest. . . . In this context the communications between each of the clients and the attorney are privileged against third parties, and it is unnecessary that there be actual litigation in progress for this privilege to apply.

*Id*. at 292. Having found that the government agency and the engineering firm shared a common interest in resolving the construction dispute, the Fourth Circuit concluded that the government agency had an attorney-client relationship with the third party neutral despite the fact that the neutral's contract was with the engineering firm, and not the government agency. *Id*. As such, the Fourth Circuit determined that the district court properly held that the report prepared by the third party neutral was exempt as attorney work product under Exemption 5.[5] *Id.* at 293.

The DOJ, like any private party, has the right to prepare for litigation and partner with others to form a joint legal strategy in an effort to do so. *See id.* at 294 ("The government has the same

---

[5]Although the Fourth Circuit did not address the "inter-agency" or "intra-agency" prong directly, its finding that the documents were properly withheld pursuant to Exemption 5 necessarily assumes an inter-agency or intra-agency relationship between the government agency and the engineering firm. *See id*. at 292-93.

right to undisclosed legal advice in anticipation of litigation as any private party. . . . Allowing disclosure here would impair an agency's ability to prepare effectively for litigation with private parties and thereby thwart its ability to discharge its functions in the public interest."). Thus, based on *Hanson*, if the documents exchanged between the government and RIM satisfy the requirements of the common interest privilege, then it is sufficient to create an inter-agency or intra-agency relationship between the DOJ and RIM as required under Exemption 5.

**1.**

The common interest doctrine, also referred to as the joint defense privilege, protects communications between parties who share a common interest in litigation. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d 333, 341 (4th Cir. 2005). The underlying purpose is "to allow persons with a common interest to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *Id*. The common interest rule "presupposes the existence of an otherwise valid privilege," and, therefore, is an extension of the attorney-client privilege and the attorney work product doctrine. *In re Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F.2d 244, 249 (4th Cir. 1990). Thus, the rule protects from forced disclosure communications between parties and/or their respective counsel and the exchange of work product among attorneys where those parties are participating in a joint effort to establish a common defense strategy in connection with actual or prospective litigation. *See id.*; *Minebea Co., Ltd. v. Papst*, 228 F.R.D. 13, 15 (D.D.C. 2005). To establish protection under the common interest privilege, the proponent must demonstrate (1) that they "share some common interest about a legal matter" and (2) evince "some form of joint strategy." *In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 341 (internal quotation marks omitted).

**a.**

The DOJ asserts that the government and RIM shared a common interest in preventing or forestalling the entry of an injunction to the extent that it would impair the public interest and, in the alternative, finding a feasible method where the government and its contractors could continue the use of BlackBerry systems if an injunction was entered. In opposition, Hunton & Williams contends that (1) the government's interest was business in nature and not legal; (2) the government never agreed with RIM that an injunction against RIM would harm the public interest; and (3) NTP was not directly opposed to the government's interests because NTP was committed to ensuring that any injunction permitted the government's continued use of BlackBerry devices in the ordinary course of business. Hunton & Williams' arguments, however, fail and the Court finds that the DOJ and RIM shared a common interest in preventing or limiting the scope of an injunction in the BlackBerry Litigation.

First, an injunction, by definition, is an equitable legal remedy, which a court may enter to prohibit someone or an entity from performing some specified act. See Black's Law Dictionary (8th ed. 2004) (defining an injunction as "a court order commanding or preventing an action"). Thus, the DOJ's and RIM's shared interest in limiting the scope of an injunction is a legal interest, even if RIM also had a business interest in preventing the injunction. *See In re Teleglobe Communc'ns Corp.*, 493 F.3d 345, 365 (3d Cir. 2007) (explaining that "an overlap of a commercial and legal interest . . . does not negate the effect of the legal interest in establishing [the common interest privilege]") (internal quotation marks omitted). Second, irrespective of whether the government ever agreed with RIM on the extent of harm an injunction would cause to the public interest, it is clear that the government and RIM agreed that they had a common interest in limiting the scope of

any injunction that would be entered in the BlackBerry Litigation.[6] Although RIM may have petitioned the government to broaden its interest statement, that does not negate the fact that they both shared an interest in limiting the scope of the injunction on the government and its private contractors.

Finally, relying on *Haines v. Liggett Group, Inc.*, 975 F.2d 81 (3d Cir. 1992), Hunton & Williams asserts that the common interest privilege requires a common litigation opponent and because NTP was committed to ensuring that any injunction permitted the government's continued use of BlackBerry devices in the ordinary course of business, the common interest privilege does not apply. In *Haines*, the Third Circuit noted that a party asserting the common interest privilege must show that "(1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort and (3) the privilege has not been waived." *Id.* at 94. Further, the "joint defense privilege enables counsel for clients facing a common litigation opponent to exchange privileged communications and attorney work product in order to adequately prepare a defense without waiving either privilege." *Id*.

Although the Third Circuit is not binding on this Court and the Fourth Circuit has not clearly stated that in order for the common interest privilege to apply there must be a common litigation

---

[6]The Common Interest Agreement entered into by RIM and the United States on November 10, 2005 expressly memorializes their agreed common interest as follows:

> The U.S. and RIM have common interests in connection with litigation identified as *NTP v. Research In Motion*. . . .Those common interests are limited to the subject of any injunction that would be considered by the court, which injunction could affect the interests of the U.S. in that it is the largest single user of BlackBerry systems and devices which are supplied by RIM.

(Fargo Decl., Ex. 2 at 1.)

opponent, even adopting this position *arguendo* it is still apparent that NTP was a common opponent to the government and RIM. In his declaration, Fargo explained that the government's goal was to secure a dismissal to prevent an injunction, while the RIM's interest was to secure a dismissal order to avoid liability. (Fargo Decl. ¶ 21.) Further, Fargo states that "[d]espite my discussions with NTP's counsel to find common ground, I did regard them as an adverse party. . . . When the government moved to intervene and requested an evidentiary hearing, NTP 'strongly opposed' the latter request." (Fargo Decl. ¶ 37.) Thus, at the time the documents at issue in this FOIA action were generated between RIM and the DOJ, both parties viewed NTP as a common opponent and took actions in accordance with that perspective. Moreover, NTP's opposition to the government's intervention in the BlackBerry Litigation suggests that it viewed the government as an opponent. As such, Hunton & Williams' argument that NTP was not a common opponent lacks merit.

Accordingly, because the government, as the largest users of the BlackBerry systems, and RIM had a joint interest in preventing or limiting the scope of any injunction entered in the BlackBerry Litigation, the Court finds that RIM and the DOJ shared a common interest.

**b.**

The DOJ asserts that the common interest privilege arose on February 4, 2005 when an attorney with the DHS informed Fargo that it had been approached by representatives of RIM regarding the potential effect of an injunction relating to the use of BlackBerry devices and services on the government's communication. This encounter, however, is insufficient to evince a "form of joint strategy" between the DOJ and RIM. *See In re Grand Jury Subpoena*, 415 F.3d at 341 (concluding that the early stages of an internal investigation are insufficient to show a joint strategy as "it would have been difficult for [the party invoking the privilege] to know at that time whether

its interests were consistent with or adverse to [the interests of the party with whom it eventually entered a joint defense]").

Instead, the Court finds that there were indicia of joint strategy between the government and RIM as of March 2005. At that time, the DOJ and RIM agreed to exchange declarations, other proposed pleadings, and their views on issues relating to the effect of any injunction on the government, and the public interest. Although Hunton & Williams argues that the date the parties entered into the written Agreement, November 10, 2005, should control the Court's finding of a common interest agreement, an oral agreement may provide the basis for establishing the existence of a common interest agreement. *Intex Recreation Corp. v. Team Worldwide Corp.*, 471 F. Supp. 2d 11, 16 (D.D.C. 2007) (finding a common interest agreement was in existence prior to the date of the parties' written agreement where there was evidence of a coordinated legal strategy almost a year prior to the execution of the written agreement).

In sum, because RIM and the government shared a common interest in preventing or limiting the scope of an injunction in the BlackBerry Litigation and coordinated a joint legal strategy as of March 2005, the Court finds that the documents exchanged between RIM and the government as of March 2005 are subject to the common interest privilege, thereby satisfying Exemption 5's threshold "inter-agency" or "intra-agency" requirement. Nonetheless, the documents exchanged between RIM and the government which precede March 2005 are subject to disclosure. Specifically, a review of the DOJ's Vaughn Index and documents submitted for an *in camera* inspection show that Doc. No. 19B[7] and certain portions of Doc. No. 261-02[8] are DOJ records which precede the common

---

[7]Doc. Nos. 211, 234 and parts of 227 are dated prior to March 2005, however, they are inter-agency and/or intra-agency email communication within the government. RIM was not included in the email chain. Thus, the emails are protected under Exemption 5 because the parties on the emails are

14

interest agreement and, therefore, are subject to disclosure.

## B.

Next the Court must determine whether the withheld documents fall within the ambit of a privilege against discovery. A review of the DOJ's Vaughn Index shows that DOJ has asserted the following privileges for the withheld documents: deliberative process privilege, attorney-client privilege, and the attorney work product doctrine. Each privilege is discussed in turn.

### 1.

The purpose of the deliberative process privilege is to encourage open and candid discussions of legal and policy matters "within the government by insulating government employees from the chilling effect likely to occur were the process to be opened up to public scrutiny and to protect against public confusion resulting from disclosure of reasons and rationales that were not ultimately the bases for the agency's action." *Keeper of the Mountains Foundation v. U.S. Dept. of Justice*, 514 F. Supp. 2d 837, 850 (S.D. W. Va. 2007) (citations omitted). The deliberative process privilege extends to "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Klamath*, 532 U.S. at 8; *accord Ethyl Corp.*, 25 F.3d at 1248. For a document to qualify under the deliberative privilege it must (1) be predecisional, i.e. "prepared in order to assist an agency decisionmaker in arriving at his decision" and (2) bear on the formulation or exercise of agency

---

government agencies, as opposed to third-parties who require a common interest agreement.

[8]Doc. No. 261-02 is an excerpt from the personal log Fargo kept of telephone calls and meetings pertaining to the BlackBerry Litigation. It appears that the DOJ has previously produced to Hunton & Williams a redacted portion of Doc. No. 261-02.

policy-oriented judgment. *Ethyl*, 25 F.3d at 1248-49 ("The deliberative process privilege, we underscore, is essentially concerned with protecting the process by which policy is formulated. . . . [W]hen material could not reasonably be said to reveal an agency's or official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable.").

**2.**

The attorney-client privilege is one of the oldest recognized privileges for confidential communications. *In re Grand Jury Subpoena: Under Seal*, 415 F.3d at 338 (*quoting Upjohn v. United States*, 449 U.S. 383, 389 (1981)). The purpose of the attorney-client is to encourage full and candid communication between attorneys and their clients. *See id.* The attorney-client privilege only applies to "confidential disclosures by a client to an attorney made in order to obtain legal assistance." *Id.* (*quoting Fisher v. United States*, 425 U.S. 391, 403 (1976)). Because the privilege hinders "the truth seeking mission of the legal process," it is narrowly construed to protect only confidential communications between lawyer and client. *Id*. The party asserting the privilege has the burden of demonstrating its applicability.[9] *Id*. at 339; *see also United States v. Jones*, 696 F.2d

---

[9]The Fourth Circuit holds that the privilege applies only if the following test is met:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Grand Jury Subpoena: £Under Seal, 415 F.3d at 339, n.3 (citing United States v. Jones, 696 F.2d 1069, 1072 (4th Cir.1982)).

1069, 1072 (4th Cir. 1982).

**3.**

In the civil discovery context, the attorney work product doctrine requires the recognition of two competing policies - permitting liberal discovery so that the truth may be uncovered, while simultaneously safeguarding attorneys' mental impressions, legal theories, and strategies so that they may render effective legal assistance to their clients. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Murray Sheet Metal Co.*, 967 F.2d 980, 983 (4th Cir. 1992). The doctrine is premised on the idea that "[n]ot even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). Courts have identified two types of work product material: (1) opinion work product, which includes the thoughts and mental impressions of an attorney and (2) fact work product, which are documents prepared by an attorney or its representative but does not contain the attorney's mental impressions. *In re Grand Jury Proceedings #5*, 401 F.3d 247, 250 (4th Cir. 2005); *In re Grand Jury Subpoena*, 463 F. Supp. 2d 573, 575 (W.D. Va. 2006). While opinion work product enjoys absolute immunity and may be subject to disclosure only in "extraordinary circumstances," fact work product is discoverable if the requesting party is able to demonstrate a substantial need and an inability to obtain the requested materials by alternative means without undue hardship. *National Union*, 967 F.2d at 984; *In re Grand Jury Subpoena*, 463 F. Supp. 2d at 575-76.

**4.**

Hunton & Williams argues that many of the withheld documents do not relate to the common interests of RIM and the government, and/or do not meet the underlying privilege asserted. Hunton & Williams specifically takes issue with emails exchanged between the DOJ and the PTO in which

portions of RIM's briefs were forwarded to the PTO for review.[10]  After reviewing the DOJ's Vaughn Index and oral arguments on the instant Motions, the Court entered an Order on November 9, 2007 directing the DOJ to produce a copy of any and all documents exchanged between the DOJ, RIM, the PTO, and the DHS relating to the reexamination proceedings for an *in camera* inspection.[11] Having reviewed the produced documents, the Court finds that, with the exception of Doc. No. 234,[12] all of the records are subject to one or more of the privileges asserted by the DOJ.  The withheld communications include analysis and opinions on legal and policy matters (i.e., the extent of the adverse impact that the BlackBerry Litigation could have on public interest) and drafts of declarations and other pleadings.  Further, regarding the records of particular concern to Hunton & Williams, the Court notes that those emails do not contain specific information about the reexamination proceedings and the records are, indeed, privileged pursuant to the attorney work product doctrine and/or the attorney-client privilege.

### IV. CONCLUSION

For the reasons expressed above, the Court holds that the DOJ and RIM entered a common interest agreement as of March 2005 and, therefore, documents that (1) fall within the scope of that agreement and (2) are subject to either the attorney-client-privilege, deliberative process privilege, or attorney work product doctrine are exempt from disclosure pursuant to Exemption 5.

---

[10]Hunton & Williams sent the Court a copy of redacted emails it received from FOIA litigation with the PTO.  The DOJ's records of those emails are in Doc. Nos. 253, 254, 256, and 256A.

[11]The Court specifically requested production of DOJ Vaughn Index Document Numbers 10, 15, 38, 43, 47-49, 75, 76, 80-87, 154-157, 159-161, 172, 203, 204, 209, 211- 219, 221-224, 226, 227, 229-234, 236-246, 248, 249, 252-254, 256, 256A, 261, 261-01 through 261-39, and 295.

[12]Doc. No. 234 is a list of government agencies who use the BlackBerry systems.  The list is not subject to any of the privileges asserted and, therefore, it is not exempt under Exemption 5.

Specifically, with the exception of DOJ Doc. Nos. 19B, 234, and certain portions of 261-02, all documents withheld, in part or in full, are exempt from disclosure pursuant to Exemptions 4, 5, and 6. The Court, however, shall order the DOJ to produce Doc. Nos. 19B, 234, and a redacted version of 261-02, which omits Fargo's thoughts and mental impressions.

An appropriate Final Order shall issue.

/s/
James R. Spencer
Chief United States District Judge

Entered this  31st  day of March 2008